Thank you, Your Honor. May it please the court, counsel? This was a three-day trial in which the prosecution's heavy-handed trial-by-ambush tactics resulted in three serious errors which poisoned Mr. Robertson's right to a fair trial. I would like to focus on those three errors today. The first error, of course, was the admission of the fifth 9-1-1 dispatch phone call. In that call, which was presented the day of trial, the morning the trial began, the district court took those calls under review, and the district court itself said that this was a close call and that it gave cause for concern. And that was correct. But what was incorrect was the district court allowing that into evidence. There were four calls which said everything that the prosecution wanted to say, which was uncontested, which is that shots were fired in the porcupine community. The fifth call also contained a same one who shot his gun here last month. That is propensity evidence. It is evidence that was attempted and did present a caricature of Mr. Robertson as a violent individual in a three-day self-defense case. Your time is short, so why isn't either an excited utterance or a present sense impression? It's a race-ghost trial that goes under several names, the doctrine does. Why didn't it meet that easily? Because it's a 9-1-1 call. That's correct, Your Honor. However, the issue I really think where we split was whether it was a testimonial statement or a non-testimonial statement. I understand the government's position that there's exceptions to the hearsay rule, but if it's a testimonial statement, which it is, then that distinguishes the Mitchell case that the district court cited. The statement, the same guy who shot his gun here last week, is a testimonial statement. It was not made to help law enforcement identify an individual. There was zero foundation whatsoever in the record that that statement was used to identify a suspect in an issue that I might add, Your Honors, was uncontested. So the fact that the district court allowed that into evidence and it was a testimonial statement, we must look at the real prejudice here. The real prejudice is that the district court was not allowed to cross-examine that anonymous witness at all, and that evidence was presented to the jury in a case, a three-day case, that came down to his testimony and whether this was self-defense or not. Now, when we combine that with the other two errors in this case, the first being the introduction, or I'm sorry, rather the second, being the introduction of the marijuana evidence, again, the day the trial began, the prosecution notified the court that it was going to introduce this evidence, and the court let it in over the defense objection. Now what we have... Was the objection a 404B objection? Your Honor, a 404B notice was not filed on this specific issue of introducing that this was a marijuana debt. So there was no 404B notice by the government. What was the defense's objection based on 403, or what was the basis of the objection? It was based on 403, Your Honor. Also, the defense counsel at trial said that if they would have known that evidence was coming in, of course, they would have identified it and dealt with it in Vordaer, which they didn't have an opportunity to do because the prosecution said, we're going to introduce this after Vordaer had already concluded. So these trial-by-ambush tactics led to palpable error. And the third, Your Honors, is that the prosecution was allowed to... The prosecution did file 609 notice stating that it intended to impeach Mr. Robertson with prior felony convictions, which of course is admissible. However, what it did not notice under 404B was that it was going to cross-examine him at the end of its cross-examination in a three-day trial about other uncharged conduct, that being a felon in possession of a firearm. There was no 404B notice that the government was going to do this. And they did it. They asked him about four prior felony convictions and cross-examined him on uncharged criminal conduct. And I might add, that was the last thing the jury heard. And when the defense asked for a curative instruction, the district court denied it. And when the defense asked the district court to simply repeat primary instruction number one, the court refused. These three errors, when we put them together, painted this caricature of Mr. Robertson that didn't give him a fair shot at trial, which came down to a three-day trial and self-defense. Now, I understand the prosecution's position that this was harmless error. But they get the analysis completely wrong. It was not harmless error because many of the facts that the prosecution argues in its brief were uncontested. It was uncontested that Mr. Robertson fired his gun. It was uncontested that he was viciously beaten by a group of four or more individuals. I mean, these facts were uncontested. So for the prosecution to say, well, the evidence was overwhelming that the shots were fired, of course they were. What was not overwhelming was whether this was self-defense or not. So this wasn't a three-week trial or a six-week trial in which I think we could say, no one's entitled to a perfect trial. I understand that. This was a three-day trial substantively with a day and a half of evidence. So when you put these three errors, which were all sprung on defense counsel in the middle of trial, some after trial had already began, then it is cumulative error. And it did prejudice his right to a fair trial. Didn't the eyewitnesses make it clear that it wasn't self-defense? No, Your Honor. I would disagree with that. Because what the eyewitnesses only made clear were that the shots were fired, that Mr. Robertson drove his car to the area. I would add this, Your Honor. They also added that some of them in which direction the shots were fired. But again, Your Honor, that was uncontested. It was uncontested by the defense. The defense's contention, of course, was that this was self-defense. And so the eyewitness testimony that was presented by the government was largely uncontested. What this case came down to, essentially, I would submit to the court, was the testimony of Yerva Quickbear, Sr. and Mr. Robertson himself. Ultimately, that's what it came down to. And so when you also think about the admission of the marijuana evidence, it gave the jury reason to believe, and I think this may be a reason for the split verdict, that this was somehow a drug debt that was owed to a drug dealer with a history of violence with four felony convictions. So it introduced a motive that simply didn't exist. So the jury was encouraged to believe that we have an African-American gentleman living in a predominantly Native American community who deals drugs, who was owed money by Yerva Quickbear, Sr. for the drugs, and who has a history of violence and was committing other crimes that were not charged. Now, the jury acquitted Mr. Robertson of Yerva Quickbear, Jr., but they convicted on Yerva Quickbear, Sr. And I think that could directly be related to the admission of this evidence because it impermissibly gave motive. Now, I also understand that the government argues that this was res geste evidence. I get that. But there was nothing about a drug debt that was necessarily involved in any of the elements of the charged offenses. Nothing. At the most, at the very most, the district court could have allowed an evidence that a debt was owed. To say that it was owed for drugs or controlled substances introduces an entirely different element to this trial, which poisoned it and which made it unfair for Mr. Robertson. If you've got a minute left for rebuttal, you can use it or you can save it. I'll save it for rebuttal. Thank you, Your Honor. Thank you, Mr. Demick. Mr. Coloner. Thank you, Your Honor. May it please the Court, my friend and colleague, Mr. Demick. I'm Kevin Coloner from the U.S. Attorney's Office in South Dakota presenting on behalf of the government. I want to start right into the question of whether this was testimonial information, the 911 calls. That's a question that's been clearly decided by the Supreme Court on the Davis case, by this court in Broome. It simply does not fit the three Crawford general categories of what makes statements testimonial, these 911 calls. Was this an excited utterance or present sense impression? This is textbook excited utterance and present sense impression. If you listen to that 911 call, you have someone calling in the moment trying to identify Mr. Robertson. By the way, none of the five calls, none of the five callers knew his name. So they're giving what they know in a rural setting to a rural police dispatch. I say that because they're trying to convey things that they think the dispatcher might know. So the call in particular says that black guy just now shot at Yarva. He's driving a white Alero. Same guy that shot over, I think she says, over at Evergreen a month ago, which is a housing unit there. And then she says, hurry, hurry. He's going to come back with a gun. She's yelling. It's clearly in the moment. This was not error in any sense by the district court. I want to address this notion of trial by ambush. The objections to these calls were raised by defense counsel the morning of trial. In fact, the district court brought out the fact, you know, why didn't you raise these a little earlier and why do I have to go back and listen to these calls now? So it wasn't ambush in any way by the government. These were produced in discovery. And, in fact, the district court was displeased with the defense counsel for only bringing it up at the last minute. Well, what did the fifth call add? It added, I guess, a sense of all the people in the community that were calling concerned at that time. Was it cumulative? In a sense, probably yes. But, of course, when we're at this stage, the extent to which it's cumulative is also the extent to which it probably didn't have any reasonable impact on the verdict. And so, you know, did the government need to put in 12 witnesses to talk about the eyewitness accounts of the shooting? Probably not, in retrospect. Did the government need to put in all of the calls, these 911 calls? Probably not, in retrospect. But, of course, the question now is whether What do you mean for the conviction you got, looking back? But you were trying for two or three then? Trying for a number of different convictions, right. And also, you know, you're about to present a bunch of eyewitnesses, and at that point the government wants their credibility of what they're going to say, also describing some of the same events. So, you know, I look at this record, and it's true that we have the key facts here are virtually uncontested. In fact, Mr. Robertson himself, when he testifies, he admits that he got in this fight. It was over a $20 debt. He says he's ganged by these folks. That's the term they use, ganged. There's really no dispute about the events that happened, about the actions. It's all about the rifle shot defense of self-defense here. And so it's about the reasons for those actions. I say that because, you know, again, the net cast over all of these evidentiary challenges is whether any of the challenged evidence had more than a slight effect on the verdict. And when you have a case with this much evidence showing what happened that day, it's hard to say that any of these challenge pieces matter. Is the evidence really overwhelming on the question of self-defense? Is it the government's evidence on the self-defense? Well, Judge Grunder, you asked a question about the eyewitnesses. There were numerous eyewitnesses that testified that they saw in the moment him pointing the gun at Yarva, and that was sort of the self-defense factual distinction in this trial. The defense was arguing, no, he aimed it at a wheelchair ramp and it ricocheted. And so there were, I believe, I wrote down, Yarva himself said, he shot right at me. Renita, his wife or girlfriend, said he saw him shooting right toward Yarva. Yarva Jr. said he aimed with both hands at him. Adrian Yellowboy said he shot towards Yarva Sr. Ashley Cedarface, another witness, said that he saw him point the gun at Yarva. There was also medical testimony by Dr. Ahabi who talked about the entrance wound and the exit wound and how that was inconsistent with this ricochet self-defense factual argument. So the government presented quite a bit of evidence on that question as well. In terms of the marijuana evidence, I also want to clear up the kind of trial by ambush point. The way this happened on the record is the government brings up its intention to raise this issue, to clarify with the district court a prior motion in limine ruling. And so, again, it's the government highlighting, you know, Your Honor, I plan to get into this later today. Is that okay? So this is not an ambush in any respect. It's not the government popping these questions in trial and announced. It's quite the opposite. The testimony was that there was a $20 debt. It was for this marijuana debt. That was from Yarva Sr. And then also from Mr. Robertson himself, he testified about a $20 debt. So, again, no, in my view at least, no prejudicial effect. Is that race jest I evidence? It's exactly what that term usually means. It creates, it completes the picture of what happened here. Put another way, if the jury wasn't informed at all about what these fights were about in the first place, they would think that there's this, you know, roving group, this family group that just beats up indiscriminate strangers for no good reason at all, that he was picked at random. That certainly wasn't true. They would have otherwise, without this evidence, had a false sense of why the fight even started in the first place. I have a few minutes left. Would you address the supervisor-released alcohol condition? It was an absolute ban. It seems like the factual basis for it is a little suspect. Yes, Your Honor. And we did our best in the briefing to talk about the, I guess, evidence in the PSR that would support it to the extent there is much. The issue with the conditions, all three of them that are challenged here, with the alcohol condition that you asked about, is that these issues were not preserved. And why I say that that's important is the district court didn't have an opportunity to further explain on the record, or didn't have really a reason to further explain on the record why these were imposed. There was no objection when these special conditions were included with the addendum to the PSR in the week before sentencing. There was no objection when it was imposed at sentencing. And, in fact, there was a discussion of the objections at sentencing, and the district court even gave defense counsel an opportunity at the end, are there any other objections? No objection there. I say that because the evidence supporting this is spare. That's true. There is case law in the circuit. Is there any evidence of alcohol dependency? Of alcohol dependency, there's very little evidence. I would say no evidence in terms of alcohol dependency. There is evidence, extensive evidence, of his past drug, both convictions for distribution, and then there's these drug abuse convictions in his past. The defense said the only alcohol mentioned is a New Year's Eve party three months before then, and there's nothing else in the record after we look at it. Is that true? I think that's accurate. I think that is accurate. But, again, what we don't have here is a district court being able to explore this particular thing. That's because it's plain error, and you know in plain error our case law, this was an issue from 2010 to 2012, says we can look at the whole record. We can look at almost anything that we can find that you all have given us. And is that going to be it, the New Year's Eve party three months before? I think on the alcohol itself, that's it. But here's what I was trying to get to. There is case law in this circuit about cross-addiction, imposing this alcohol condition where there's evidence of other chemical dependency. I think that may be the basis by which this court could sustain it. Here's my suggestion. If the court is inclined to remand on this question, I'd ask that it not be vacated, but rather that it be remanded with an instruction that allows the district court to explore this question because they didn't have that opportunity given the lack of preservation, and perhaps modify or vacate the condition at that point. Unless there's any other questions, my time's up and I'll take my seat. Thank you, Your Honors. Thank you, Mr. Coloner. Mr. Dimmock. Thank you, Your Honors. I'd just like to address three points made by opposing counsel. The first is that he said Davis makes it clear that this was not a testimonial statement in the 5th 9-1-1 call. If you've heard of page 11 of the appellant's brief, I quoted the Davis case, which is a Supreme Court case. Davis, well, actually quoting Lilly v. Virginia, in Davis the caller was speaking about events as they were actually happening rather than, quote, describing past events. The same one who shot his gun here last month is a past event. This is testimonial. So I disagree with the contention that Davis says it's not testimonial. Second of all, ambush at trial, just because it's produced in discovery doesn't mean it's coming into evidence. So the government's argument that we produced it in discovery and therefore the defense was on notice doesn't make it right. It's still ambush when the day of trial, after voir dire has been concluded, you say, I'm going to introduce this, I'm going to introduce these phone calls. They were in discovery. It's still trial by ambush because you haven't given proper notice under 404B. Finally, Your Honors, in response to Justice Grinder's question about overwhelming evidence, four of the witnesses that counsel named, Yerva Sr., Yerva Jr., Renee Yellowboy, and A.J., were all participants in beating Mr. Robertson. That's not overwhelming evidence. The government wants to say as if these were unimpeachable, objective eyewitnesses. These were the same people who beat him up. It was not overwhelming evidence when it came to self-defense. Thank you, Your Honors. Thank you, Mr. Dimmock.